UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| TETYANA N. S.[1], <br><br>  Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 5:18-cv-00756-JDE <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Tetyana N. S. ("Plaintiff") filed a Complaint on April 13, 2018, seeking review of the Commissioner's denial of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties filed a Joint Submission ("Jt. Stip.") regarding the issues in dispute on December 12, 2018. The matter now is ready for decision.

---

[1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.

# BACKGROUND

Plaintiff filed her application for SSI on June 16, 2014, and her application for DIB on July 3, 2014, alleging disability commencing on September 24, 2011.[2] AR 194-205. On December 7, 2016, after her applications were denied initially and on reconsideration (AR 91-92, 119-20), Plaintiff, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ"), as did a vocational expert. AR 45-77.

On February 22, 2017, the ALJ found Plaintiff was not disabled. AR 20-32. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date and found she had severe impairments of degenerative disc disease of the cervical and lumbar spine with radiculopathy and facet arthropathy; peripheral neuropathy; bipolar disorder; and anxiety. AR 22. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and had the residual functional capacity ("RFC") to perform light work, except she is: (1) capable of lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; (2) capable of sitting, standing, and/or walking six hours out of an eight-hour workday, but with a sit/stand option; (3) restricted from climbing ladders, ropes, or scaffolds; (4) able to occasionally climb ramps and stairs, bend, stoop, kneel, crouch, and crawl; (5) able to frequently balance; (6) restricted from performing any forceful gripping or grasping bilaterally; (7) able to frequently perform twisting and turning movements bilaterally as well as fine and gross manipulation bilaterally; (8) precluded from working at

---

[2] Plaintiff alleged in her SSI application that she became disabled September 1, 2011, but in her DBI application she alleged September 24, 2011. AR. 196, 204. The Court will utilize the latter date to comport with the ALJ's decision and the Joint Stipulation. AR 20; Jt. Stip. at 2.

2

unprotected heights, around moving machinery, or any other such hazards; (9) able to concentrate for up to two-hour periods; (10) limited to unskilled tasks in a non-public setting and occasional interaction with supervisors and coworkers; and (11) likely to be off task approximately five percent of an eight-hour workday or workweek, and be absent once a month. AR 24-25.

The ALJ determined Plaintiff was unable to perform her past relevant work as a human resources assistant and personnel recruiter. AR 30. Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded she was capable of performing jobs that exist in significant numbers in the national economy, including: electronics worker (Dictionary of Occupational Titles ["DOT"] 726.687-010); small products assembler (DOT 706.684-022); and hand packager (DOT 559.687-074). AR 30-31. Accordingly, the ALJ concluded Plaintiff was not under a "disability," as defined in the Social Security Act ("SSA"), from the alleged onset date through the date of the decision. AR 31-32. Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied, making the ALJ's decision the Commissioner's final decision. AR 1-6. This action followed.

## II.
## LEGAL STANDARDS

### A. Standard of Review

Under 42 U.S.C. § 405(g), this court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and supported by substantial evidence based on the record as a whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a

preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless (Molina, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter, 806 F.3d at 492 (citation omitted).

**B. Standard for Determining Disability Benefits**

When the claimant's case has proceeded to consideration by an ALJ, the ALJ conducts a five-step sequential evaluation to determine at each step if the claimant is or is not disabled. See Molina, 674 F.3d at 1110.

First, the ALJ considers whether the claimant currently works at a job that meets the criteria for "substantial gainful activity." Id. If not, the ALJ proceeds to a second step to determine whether the claimant has a "severe" medically determinable physical or mental impairment or combination of impairments that has lasted for more than twelve months. Id. If so, the ALJ proceeds to a third step to determine whether the claimant's impairments render the claimant disabled because they "meet or equal" any of the "listed impairments" set forth in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. See Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d

996, 1001 (9th Cir. 2015). If the claimant's impairments do not meet or equal a "listed impairment," before proceeding to the fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can do on a sustained basis despite the limitations from her impairments. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Social Security Ruling ("SSR") 96-8p.

After determining the claimant's RFC, the ALJ proceeds to the fourth step and determines whether the claimant has the RFC to perform her past relevant work, either as she "actually" performed it when she worked in the past, or as that same job is "generally" performed in the national economy. See Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ proceeds to a fifth and final step to determine whether there is any other work, in light of the claimant's RFC, age, education, and work experience, that the claimant can perform and that exists in "significant numbers" in either the national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). If the claimant can do other work, she is not disabled; but if the claimant cannot do other work and meets the duration requirement, the claimant is disabled. See Id. at 1099.

The claimant generally bears the burden at each of steps one through four to show she is disabled, or she meets the requirements to proceed to the next step; and the claimant bears the ultimate burden to show she is disabled. See, e.g., Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). However, at Step Five, the ALJ has a "limited" burden of production to identify representative jobs that the claimant can perform and that exist in "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Tackett, 180 F.3d at 1100.

## III.

## DISCUSSION

The parties present two disputed issues (Jt. Stip. at 9):

5

Issue No. 1: Whether the ALJ erred by creating a highly specific RFC without the support of a medical opinion; and

Issue No. 2: Whether the ALJ properly evaluated Plaintiff's family members' third-party statements and Plaintiff's subjective symptoms.

**A.   RFC Determination**

   1. Applicable Law

An assessment of a claimant's RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis: eight hours a day, five days a week, or an "equivalent" work schedule. See Social Security Ruling 96-8p. An ALJ is responsible for determining a claimant's RFC, that is, for assessing the most a claimant can still do despite her limitations, including medically determinable impairments that are not severe and any related symptoms such as pain. See 20 C.F.R. §§ 404.1545, 416.945; see also Reddick, 157 F.3d at 724 ("Social Security regulations define [RFC] as the 'maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.'") (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.00(c)). An ALJ will assess a claimant's RFC based on all of the relevant medical and other evidence in the record, and the ALJ will consider descriptions and observations of the claimant's limitations from her impairments, including limitations resulting from symptoms such as pain, from medical sources, from the claimant herself, or from family, neighbors, friends, or others. See 20 C.F.R. §§ 404.1545, 416.945. An RFC determination by an ALJ is not a "medical opinion," but rather an "administrative finding" that is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2); see also Dominguez v. Colvin, 808 F.3d 403, 409 (9th Cir. 2015), as amended (Feb. 5, 2016) (final responsibility for deciding RFC is up to the ALJ, not reviewing court) (citing 20 C.F.R. § 416.927).

2. <u>Analysis</u>

In Issue 1, Plaintiff asserts the ALJ's RFC determination is unsupported by any medical opinions and thus is not supported by substantial evidence. Jt. Stip. at 9. She argues the RFC determination is not an administrative assessment and the ALJ cannot independently review clinical findings, diagnosis, and imaging reports that do not contain a functional assessment, and then determine the RFC. <u>Id.</u> at 9-12, 22-23. Plaintiff therefore asserts it is therefore unclear how the ALJ reached a highly specific RFC. <u>Id.</u> at 12-14, 23.

Here, the ALJ provided a detailed review of the medical evidence, including the opinions of the State agency reviewing physicians and a consultative examining physician, all who opined Plaintiff could perform medium work. AR 28-29, 78-90, 93-105-118, 454-460. The ALJ gave Plaintiff the benefit of the doubt and fashioned a more-restrictive, limited range-of-light-work, RFC than opinioned by the doctors. AR 25, 29. Thus, contrary to Plaintiff's assertion, the RFC was based in part on medical opinions that Plaintiff could work.[3] AR 29. Further, this determination is an "administrative finding" specifically reserved for the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2); <u>Dominguez</u>, 808 F.3d at 409; <u>Lynch Guzman v. Astrue</u>, 365 F. App'x 869, 870 (9th Cir. 2010) (a claimant's RFC "is an administrative finding reserved to the Commissioner"); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine [RFC].").

---

[3] To the extent Plaintiff also contends the ALJ should have further developed the record (Jt. Stip. at 14, 23), she failed to show the opinions examined by the ALJ and the other medical evidence was ambiguous or inadequate to fashion the RFC. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ's duty to further develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Further, Plaintiff has failed to show any opinion supports a finding that she cannot work, or at least supports a more restrictive RFC than fashioned by the ALJ. See AR 29 (ALJ noting "there is no medical source statement that suggested functional limitations more restrictive than those functional limitations included in the RFC"). Indeed, Plaintiff appears to admit the medical record contains no assessed functional limitations. Jt. Stip. at 11. Plaintiff failed to meet her burden of showing error. See Willens v. Berryhill, 709 F. App'x 867, 868 (9th Cir. 2017) (upholding disability determination in part because "no physician made an assessment that [claimant] was disabled"); Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (substantial evidence supported finding claimant, although impaired, was not disabled and could perform a range of medium work because "[n]one of the doctors who examined [claimant] expressed the opinion that he was totally disabled").

Finally, the RFC is not too specific. Courts "demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." See Brown-Hunter, 806 F.3d at 492. Plaintiff cites no authority prohibiting the ALJ from fashioning a detailed RFC tailored to Plaintiff's limitations. See Waldner v. Colvin, 2015 WL 711020, at *6 (D. Or. Feb. 18, 2015) (no error in RFC finding that included limitations tailored to claimant).

**B.  Third-Party Testimony**

    1. Applicable Law

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also 20 C.F.R. § 416.913(d) (statements from spouses, parents, other relatives, and friends can be used to show severity of impairments and effect on ability to work). Such testimony "cannot be disregarded without comment." Bruce, 557 F.3d at 1115

(quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting law witness testimony, an ALJ must give specific reasons germane for discounting the testimony. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

2. Analysis

In part of Issue 2, Plaintiff contends the ALJ erred by discounting family member statements about her condition. Jt. Stip. at 27-28, 39. Plaintiff's son submitted a third-party function report and her husband submitted a third-party statement (collectively, "third-party testimony"), attesting to Plaintiff's limitations. AR 234-42, 314. They indicate Plaintiff is limited in her functioning due to chronic pain, mood disorder, and depression and note she has difficulty lifting, squatting, bending, standing, reaching, walking sitting, kneeling, climbing stairs, completing tasks, using her hands, and handling stress and changes to routine. AR 234-42, 314. They describe her treatment, including Trazadone medication and back shots and note Plaintiff needs to use a wheelchair. AR 240-41, 314.

The ALJ summarized portions of the third-party testimony and assigned it only partial weight, discounting the testimony because it was: (1) less persuasive than medical opinions of record in that it was not supported by clinical or diagnostic medical evidence; (2) inconsistent with Plaintiff's daily activities; and (3) inasmuch as it reflected limitations expressed by Plaintiff's testimony, it was inconsistent with the overall evidence of record. AR 29.

Here, the ALJ improperly discounted the third-party testimony. First, the fact that third-party testimony is not supported by clinical or diagnostic medical evidence is not a germane reason. Though lay testimony is necessarily subjective in nature, friends and family members who are in a position to

observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. See Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). Indeed, the statements do not contain medical findings because the very purpose of third-party testimony is to obtain the lay witness's subjective impression of claimant's abilities and limitations. Thus, the ALJ improperly discounted the statements for the first reason.[4] See Augg v. Colvin, 2016 WL 1388054, at *5 (W.D. Wash. Apr. 8, 2016) ("There is no requirement that a lay witness be 'medically trained to make exacting observations.' Nor should there be given that lay witnesses are by definition not medical professionals."); Johnson v. Colvin, 2015 WL 5012651, at *3 (W.D. Wash. Aug. 5, 2015) (third-party testimony "cannot be rejected because it itself does not contain or rely on objective evidence"); Earhart v. Colvin, 2015 WL 2368597, at *4 (D. Or. May 18, 2015) (noting Commissioner's concession that third-party's lack of medical training was not a valid reason for rejecting testimony).

---

[4] As an example of the testimony not being supported by clinical or diagnostic medical evidence, the ALJ stated Plaintiff's "physical and emotional disorder was well managed with conservative treatment and medication." AR 30. To the extent this is a separate reason for discounting the third-party testimony, it is not sufficient. Treatment notes repeatedly indicate Plaintiff was "refractory to numerous conservative therapies," and back injections, medial branch blocks, and prescription medication such as Trazadone and Seroquel is not conservative treatment. AR 309, 312, 315, 529-30, 544-45, 559-60, 573-74, 587, 601-02, 604-05, 624, 638, 652, 655, 667, 681, 695-96, 788, 799, 812, 815; see Kephart v. Colvin, 2014 WL 2557676, at *5 (C.D. Cal. June 6, 2014) (injections and medial branch block not considered conservative treatment); Heyboer v. Colvin, 2013 WL 2423169 at *7 (C.D. Cal. June 4, 2013) (prescription pain medication and "repeated" epidural injections not conservative treatment); Faber v. Berryhill, 2017 WL 6761936, at *10 (S.D. Cal. Dec. 29, 2017) (claimant's prescribed medication, including antidepressant Trazodone and antipsychotic Seroquel, not conservative); Childress v. Colvin, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (years of talk therapy and antidepressants such as Trazodone and antipsychotic prescription medication is not conservative treatment).

Second, the ALJ improperly relied upon Plaintiff's daily activities to discount the third-party testimony. The ALJ cited Plaintiff's ability to take care of her personal needs, manage finances, follow written and spoken instructions, pay attention, complete tasks, go out alone, go to dinner twice a month, watch television, read, and use a computer. AR 29.

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014); Vertigan, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). "[O]nly if his level of activity [was] inconsistent with [a claimant's] claimed limitations would these activities have any bearing on his credibility." Garrison, 759 F.3d at 1016. A claimant's daily activities may be "grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Childress, 2015 WL 2380872 at *15 (concluding ALJ erred in finding claimant's daily activities were inconsistent with alleged severity of his mental impairments where there were no indication claimant's daily activities either comprised a "substantial" portion of claimant's day or were "transferrable to a work environment"). Further, an ALJ must "elaborate on which daily activities conflicted with which . . . testimony." Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original).

11

Plaintiff's ability to take part in meager activities of daily living is not inconsistent with the third-party testimony or Plaintiff's claim that her physical and mental impairments preclude her from performing a full-time job in a workplace setting. See Childress, 2015 WL 2380872, at *15. There is no evidence these activities either comprised a "substantial" portion of Plaintiff's day or were "transferrable" to a work environment. See Orn, 495 F.3d at 639; see also Smolen v. Chater, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (recognizing "many home activities may not be easily transferrable to a work environment"). Nor did the ALJ tie which daily activities conflicted with which part of the third-party testimony. See Burrell, 775 F.3d at 1138. Plaintiff's daily activities did not provide a specific and germane reason supported by substantial evidence for discounting the third-party statements.

The third and final reason offered by the ALJ is likewise inadequate. A lack of support from the "overall medical evidence" is not a proper basis for disregarding lay witness' observations. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017) (quoting Bruce, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). That lay testimony and third-party function reports may differ from medical records alone "is precisely why such evidence is valuable at a hearing." Id. (citing Smolen, 80 F.3d at 1289 (ALJ erred by rejecting testimony of claimant's family members about claimant's symptoms because medical records did not corroborate those symptoms)); Bray v. Berryhill, 2018 WL 3076919, at *9 (C.D. Cal. June 19, 2018) ("[T]o the extent the ALJ determined that the [third-party function] Report should be discounted based on a lack of support from the medical records, this was not a germane reason to give 'little weight' to [friend's] observations.")

Accordingly, the ALJ did not rely on specific germane reasons supported by substantial evidence to discount the third-party testimony. In this instance,

the Court cannot conclude that the ALJ's error was harmless. The ALJ's decision lacks any "meaningful explanation" based on specific evidence in the record for rejecting the third-party testimony. See, e.g., Brown-Hunter, 806 F.3d at 492 (ALJ's failure adequately to specify reasons for discrediting testimony "will usually not be harmless"). Because of the significant functional limitations reflected in the third-party testimony, the Court cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. Stout, 454 F.3d at 1055-56.

## C. Remand is appropriate.

The decision whether to remand for further proceedings is within this Court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Harman, 211 F.3d at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). A remand for further proceedings is appropriate where outstanding issues must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled and award disability benefits. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Here, the Court concludes that remand for further proceedings is warranted. Properly credited third-party statements necessarily bolster Plaintiff's subjective complaints, the ALJ's assessment of which is challenged in the second part of Issue 2. Moreover, several of the reasons the Court found inadequate to discount the third-party statements were also relied on by the ALJ to discount Plaintiff's subjective complaints. Thus, a remand will allow the ALJ to reconsider Plaintiff's credibility in light of the third-party

13

statements. See e.g., <u>Vaughn v. Berryhill</u>, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues because "[t]he ALJ's . . . evaluations of [p]laintiff's credibility . . . are inescapably linked to conclusions regarding the medical evidence"); <u>Alderman v. Colvin</u>, 2015 WL 12661933, at *8 (E.D. Wash. Jan. 14, 2015) (remanding in light of interrelated nature of ALJ's decision to discount claimant's credibility and other determinations).

Because it is unclear, in light of these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See <u>Brown-Hunter</u>, 806 F.3d at 495; <u>Bunnell</u>, 336 F.3d at 1115-16. The parties may freely take up the remaining issue in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

Accordingly, on remand, the ALJ shall reassess Plaintiff's subjective complaints in conjunction with the third-party statements, and then reassess Plaintiff's RFC in light of the subjective symptom testimony and third-party testimony, and thereafter proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers.

## IV.
## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this Order.

Dated: January 24, 2019

_____
JOHN D. EARLY
United States Magistrate Judge